UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

PAMELA HUNTER,

          Plaintiff,

    v.

CC GAMING, LLC, d/b/a Johnny Z's Casino, a Colorado limited liability company,
JZ GAMING, LLC, d/b/a Z Casino, a Colorado limited liability company, and
GREGORY GAMING, LLC, d/b/a Grand Z Casino Hotel, a Colorado limited liability company,

          Defendants.

---

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

---

Plaintiff Pamela Hunter, on behalf of herself, a class, and a collective of similarly situated individuals, by and through her attorneys, HKM Employment Attorneys, LLP, brings this Collective and Class Action Complaint and Jury Demand ("Complaint") against CC Gaming, LLC, d/b/a Johnny Z's Casino ("Johnny Z's"), JZ Gaming, LLC, d/b/a Z Casino ("Z Casino"), and Gregory Gaming, LLC, d/b/a Grand Z Casino Hotel ("Grand Z") (collectively, "Defendants" or the "Company"), and, in support thereof, alleges as follows:

**PRELIMINARY STATEMENT**

1.    This is a class and collective action lawsuit brought by Plaintiff on behalf of a class of all similarly situated individuals who were employed by the Company to recover damages, injunctive and declaratory relief, costs, attorneys fees, and other appropriate relief resulting from the Company's policy and practice of paying rounded hours rather than actual hours worked,

including overtime wages, in violation of Colorado law and the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA").

2.      The Company's policy and practice of paying non-exempt, hourly employees rounded hours, as opposed to actual hours worked, deprives such employees of regular and overtime pay they have earned.  Plaintiff therefore brings this action on behalf of similarly situated current and former employees of Defendants, pursuant to 29 U.S.C. § 216 and Colorado law for: (1) regular wages from Defendants for work performed for which they received no wages; (2) overtime wages for work performed for which they did not receive overtime pay; (3) liquidated damages for Defendants' willful FLSA violations; (4) statutory penalties as applicable under the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* for Defendants' willful failure to provide payment of all current and former employees' unpaid wages within 14 days of service of this Complaint; (5) costs; and (6) attorneys' fees.

## PARTIES

3.      Plaintiff hereby incorporates all the paragraphs of this Complaint as though set forth fully and separately herein.

4.      Plaintiff, Pamela Hunter, is a former employee of Defendants that worked at Johnny Z's, Z Casino and Grand Z in Colorado.  Plaintiff is, and at all times relevant to this Complaint was, a resident of Colorado.

5.      Defendant CC Gaming, LLC, d/b/a Johnny Z's Casino ("Johnny Z's") is, and at all times relevant to this Complaint was, a Colorado limited liability company with a principal office at 101 Gregory Street, Black Hawk, Colorado 80422.

6.      Defendant JZ Gaming, LLC, d/b/a Z Casino ("Z Casino") is a Colorado limited

liability company with a principal office at 132 Lawrence Street, Central City, Colorado 80427.

7.    Defendant Gregory Gaming, LLC, d/b/a Grand Z Casino Hotel ("Grand Z") is a Colorado limited liability company with a principal office at 101 Gregory Street, Black Hawk, Colorado 80422.

8.    Defendants own and operate hotels and casinos in Colorado, including Johnny Z's in Central City, Colorado; Grand Z in Central City, Colorado; and Z Casino in Black Hawk, Colorado.

9.    According to the website shared by Defendants: "Johnny Z's, Z Casino, Grand Z, and the Z Stop gas and convenience store are all part of the Z Family of properties.  Our company began in 2010 with the opening of Johnny Z's in Central City and has been growing ever since."

10.    Upon information and belief, in 2013, the owner of Johnny Z's, John Zimpel, formed JZ Gaming, LLC and acquired the casino formerly known as Bullwhackers Casino, Inc. in Black Hawk, Colorado; which now operates under the trade name "Z Casino".  Upon information and belief, Mr. Zimpel is or has been the managing member of Z Casino.  Mr. Zimpel is also the registered agent for Z Casino.

11.    Since 2013, Johnny Z's and Z Casino have been and are a single common "enterprise" as defined by the FLSA, 219 U.S.C. § 203(r)(1), engaged in related activities, under unified operation and common control, with a common business purpose, and with an annual gross volume of sales or business revenue of at least $500,000.00.

12.    Since 2013, Johnny Z's and Z Casino had the authority and exerted operational control over the terms and conditions of employment of the employees of their casinos, including the authority to direct and supervise the work of employees, including Plaintiff and the individuals

she seeks to represent in this case; and the authority to make decisions regarding wage and hour policies and practices, including the decision to utilize a rounding policy that deprived Plaintiff and other similarly-situated employees payment for actual hours worked and overtime wages.

13.     Since 2013, Johnny Z's and Z Casino were joint employers for purposes of the FLSA and Colorado law, because of the interrelatedness of their operations; their common management, including human resources; and the significant exercise of control over the terms and conditions of employment of Plaintiff and the class members she seeks to represent.

14.     Upon information and belief, in 2017, the owner of Johnny Z's and Z Casino, Mr. Zimpel, formed Gregory Gaming, LLC and acquired the hotel and casino formerly known as Reserve Casino Hotel in Central City, Colorado; which now operates under the trade name "Grand Z Casino Hotel".  Grand Z shares the same principal office street address and mailing address as Johnny Z's.

15.     Since 2017, Defendants have been and are a single common "enterprise" as defined by the FLSA, 219 U.S.C. § 203(r)(1), engaged in related activities, under unified operation and common control, with a common business purpose, and with an annual gross volume of sales or business revenue of at least $500,000.00.

16.     Since 2017, Defendants each further had the authority and exerted operational control over the terms and conditions of employment of the employees of their casinos, including the authority to direct and supervise the work of employees, including Plaintiff and the individuals she seeks to represent in this case, and the authority to make decisions regarding wage and hour classifications, including the decision to utilize a rounding policy that deprived Plaintiff and other similarly-situated employees payment for actual hours worked and overtime wages.

17.     Since 2017, the setting of wage and hour policies and practices for Defendants'

non-exempt, hourly employees has been established and implemented by CC Gaming, LLC and/or

all Defendants jointly.  Defendants have been and are joint employers for purposes of the FLSA

and Colorado law, because of their interrelatedness of operations; their common management,

including human resources personnel; and their significant exercise of control over the terms and

conditions of the employment of Plaintiff and their similarly-situated non-exempt hourly

employees.

18.     At all times relevant, each Defendant has been an "employer" within the meaning

of the FLSA, 29 U.S.C. § 203(d).

19.     At all times relevant, each Defendant has been an "employer" of Plaintiff in a

covered industry as defined by the Colorado Minimum Wage Order and the Colorado Minimum

Wage Act.  Each Defendant is further an "employer" pursuant to the Colorado Wage Act, C.R.S.

§ 8-4-101(6).

## JURISDICTION AND VENUE

20.     Plaintiff incorporates by reference the above paragraphs as though set forth

separately and fully herein.

21.     Plaintiff's claims, both individually and on behalf of Class Members, are brought

pursuant to the FLSA, which authorizes lawsuits by private parties to recover damages for

violations of tis wage and hour provisions, and the Court therefore has original jurisdiction over

this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

22.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## FACTUAL ALLEGATIONS

24.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

25.     Defendants have employed hundreds, if not over a thousand, of hourly, non-exempt employees in Colorado over the course of the past three years.

26.     Under Colorado law, Defendants are required to track the number of hours its employees work; regularly pay its hourly employees for their time worked; and keep accurate records thereof.  *See* Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* ("Wage Act"); Colorado Minimum Wage Order No. 35, 7 CCR 1103-1:3, 12 ("CMWO"); *see also* the Colorado Minimum Wage Act, C.R.S. §8-6-101, *et seq.* ("CMWA").  If an employer fails to do so, an employee is entitled to bring a private cause of action to recover for the time worked without compensation.

27.     Defendants employed Plaintiff as a dealer for table games from on or about May 1, 2017 through on or about January 25, 2019.  Throughout the entirety of Plaintiff's employment with Defendants, Defendants engaged in the same rounding policies and practices described herein.

28.     Throughout Plaintiff's employment with Defendants, Plaintiff was required to work at all three of Defendants' casino locations with varying frequency.

29.     Defendants' Team Member Handbook for its "Z Team Members" also provides that: 'CC Gaming, LLC proudly operates casinos in Black Hawk and Central City.  All Team Members will be trained to work in all casinos and should plan on moving between casinos within

a normal work week."

30.    Defendants track the number of hours its hourly, non-exempt employees ("Hourly Employees") work, including Plaintiff, with an electronic time-keeping system.  Defendants pay their Hourly Employees, including Plaintiff, according to its time-keeping system data. Defendants require its Hourly Employees to use the time-keeping system to (i) punch in at the start of their shift; and (ii) punch out at the end of their shift.

31.    Defendants' time-keeping system also records and stores the times Hourly Employees, including Plaintiff, actually punch in and out ("actual punch times").  Defendants could pay their employees for all hours actually worked using those actual punch times.  Instead, Defendants pay their Hourly Employees, including Plaintiff, to the nearest quarter-hour in accordance with Defendants' long-standing rounding policy, which is applicable to all Hourly Employees.

32.    Under the policy, paid time is rounded in 7-minute increments.  For example, were an employee to clock in at 11:53 for a shift scheduled to begin at 12:00, the time keeping system would report the employee's start time as 12:00 and pay the employee accordingly – denying the employee pay for the first 7 minutes the employee was clocked in and working.  Were that same employee then to clock out at 6:07, the time keeping system would report the employee's end time as 6:00 – denying the employee pay (again) for the last seven minutes that he or she was on the clock and working.

33.    While the time keeping system, in theory, can also round employee time in favor of the employee – such as where an employee clocks in up to 7 minutes after his or her scheduled start time, or clocks out up to 7 minutes before his or her scheduled end time – the overall effect

of the rounding policy, when applied in conjunction with other policies and practices of Defendants, is to deny Hourly Employees pay for all time worked.

34.    For example, Defendants' attendance, tardy, discipline and general time-keeping policies discourage and effectively prevent Hourly Employees from punching in more than 7 minutes early for their shift.  At all times material, it has been Defendants' policy and practice to actively discourage Hourly Employees from punching in more than 7 minutes early for their shift.

35.    Defendants further routinely required their Hourly Employees, including Plaintiff, to punch in prior to the time of their scheduled shifts because Defendants' Hourly Employees are required to be at their scheduled workstations at the time their scheduled shift begins.  Plaintiff and Defendants' Hourly Employees thus typically are required to clock-in approximately 5-to-7 minutes before the start of their shifts.  Defendants' Hourly Employees would not be paid for punching in when they were required to, however, until the scheduled start time of their shifts.

36.    As a result, the rounding policy is not facially neutral and, in practice, it consistently and systematically denies Defendants' Hourly Employees pay for all hours they work.

37.    Defendants also have a tardiness policy that discourages Hourly Employees from punching in after their scheduled start time.  Hourly Employees generally do not wish to become subject to disciplinary action.  They make efforts on a daily basis to avoid punching in after their scheduled start time.  This results in Hourly Employees punching in between 1 and 7 minutes early more often than they clock in between 1 and 7 minutes late, which, over time, works in conjunction with the rounding policy to deprive such Hourly Employees of pay for all hours they have worked.

38.    Defendants' Attendance Policy further states that Hourly Employees will be disciplined for punching in after (or, in many cases, later than 7 minutes prior to) their scheduled

shift.  Defendants discipline their Hourly Employees by assigning them attendance "points," which, if accumulated, could lead to termination.  "Tardiness" results in a .5 point being assessed against the employee.  Defendants' Attendance Policy further specifically provides: "Tardiness will be defined as clocking in for work later than 5 minutes after your scheduled start time.  ***Repeated instances of clocking in late, but within the 5 minute grace period, will be considered pattern absenteeism***."

39.    If an Hourly Employee accumulates 10 attendance points in a rolling 12-month period, the Hourly Employee is subject to termination by Defendants for violation of the Attendance Policy.  Defendants' Attendance Policy further provides that "[e]ven one unexcused absence or tardiness may be considered excessive, depending on the circumstances."

40.    In addition to penalizing Hourly Employees from punching in later than their scheduled shift start time, Defendants also discourage Hourly Employees from punching out earlier than the end of their scheduled shift by requiring approval by management if an Hourly Employee wishes to punch out earlier than the end of their scheduled shift, which Defendants refer to as an "Early Out (EO)".

41.    Federal law permits employers to round employees' hours up or down to the nearest quarter hour, provided that "this arrangement averages out so that the employees are fully compensated for all the time they actually work."  29 C.F.R. § 785.48(b).  Rounding must be implemented in a manner that "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."  *Id.*

42.    The cumulative effect of Defendant's policies and practices is that Plaintiff and the Hourly Employees, over time, are consistently and systematically deprived of pay for all time they

actually work.

43.     Further, Defendants are required to compensate their Hourly Employees at the rate
of time and one half for all time worked in excess of 40 hours per week pursuant to the FLSA,
CMWA, and CMWO.  Defendants' rounding policies and practices have therefore further deprived
Plaintiff and the Hourly Employees of payment for hours worked at their regular hourly rates, in
addition to overtime wages for all time worked in excess of 40 hours per week.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

44.     Plaintiff incorporates by reference the above paragraphs as though set forth fully
and separately herein.

45.     Pursuant to 29 U.S.C. § 207, Plaintiff brings this FLSA collective action on behalf
of herself and all other similarly situated Hourly Employees pursuant to the FLSA, 29 U.S.C. §
216(b), to recover unpaid minimum wages, overtime compensation, liquidated damages,
prejudgment interest, attorneys' fees and costs, and other damages related to Defendants' violation
of the FLSA.

46.     Plaintiff brings this action under the FLSA on behalf of the following collective
class of similarly situated employees:

> *All hourly, non-exempt employees who worked for Defendants in the State*
> *of Colorado any time within three years of the filing of this Complaint*
> *through final disposition of this case (the "Collective Action Period"), who*
> *did not receive compensation for time and/or overtime on account of*
> *Defendants' rounding policies and practices (the "Collective Action*
> *Class").*

47.     Plaintiff is a member of the Collective Action Class because she worked for
Defendants as a non-exempt, hourly employee who was subject to Defendants' rounding policies
and practices and did not receive compensation for time worked and/or overtime during the

Collective Action Period

48.     At all relevant times, Plaintiff and all current and former Hourly Employees are and have been similarly situated and have been subjected to Defendants' common rounding policies and practices that deprived the Collective Action Class of payment for all time worked and overtime wages.  Plaintiff and all putative members of the Collective Action Class were therefore together the victims of a single decision, policy or plan with respect to Defendants' implementation of its rounding policies and practices.

49.     Plaintiff, individually and on behalf of other similarly situated Hourly Employees, therefore seeks relief on a collective basis and challenges Defendants' rounding policies and practices, which, as set forth above, operate in a manner which fails to pay for time Plaintiff and the Hourly Employees worked to the benefit of Defendants.

50.     The precise number and identity of other persons yet to opt-in and consent to be members of the Collective Action Class can be easily ascertained by using Defendants' payroll and personnel records, and potential class members may easily and quickly be notified of the pendency of this action by electronic and regular mail.  Plaintiff requests that the Court authorize notice to the members of the FLSA Collective to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid regular wages, unpaid overtime wages, liquidated damages under the FLSA, and all other relief requested herein.

51.     There are hundreds of similarly situated current and former Hourly Employees of Defendants', if not well over a thousand, that would benefit from the issuance of court-supervised notice and an opportunity to join the present action.

52.    Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and members of the Collective Action Class.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

54.    Defendants engaged in common acts, practices and policies that violated Plaintiff's and the Hourly Employees' rights under Colorado state wage and hour laws.  Accordingly, Plaintiff brings claims for relief on her own behalf and as a representative of a class pursuant Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure to recover unpaid wages, unpaid overtime compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages related to Defendants' violation of Colorado law.

55.    The proposed class members ("Class Members") are defined as:

> *All hourly, non-exempt employees who worked for Defendants in the State of Colorado any time within three years of the filing of this Complaint through final disposition of this case (the "Class Action Period"), who did not receive compensation for time worked and/or overtime on account of Defendants' rounding policies and practices (the "Colorado Class").*

56.    This action is properly maintained as a class action under Rule 23(a) and Rule 23(b) because: (i) the Colorado Class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact that are common to the Colorado Class; (iii) the claims of Plaintiff are typical of the claims of the Colorado Class; and (iv) Plaintiff will fairly and adequately protect the interests of the Colorado Class.

### Numerosity.

57.    The number of persons who are Class Members, as described above, is so numerous

that joinder of all Class Members in one action is infeasible and impracticable. Plaintiff estimates on information and belief that the total number of putative Colorado Class members represents hundreds of employees, if not over a thousand. The precise number of Colorado Class members can be easily ascertained using Defendants' personnel and payroll records.

**Commonality**.

58. There are numerous and substantial questions of law and fact common to the Colorado Class members, including, without limitation, the following:

a. Whether Defendants implemented a policy of paying its hourly, non-exempt employees for rounded hours instead of actual punch times;

b. Whether Defendants' rounding policies and practices average out so that, over time, Defendants failed to compensate the Class Members properly for all the time they have worked;

c. Whether Defendants' rounding policies and practices deprived Class Members of overtime compensation for hours worked in excess of 40 hours per workweek;

d. Whether Defendants' rounding policy is facially neutral and applied in a non-neutral way;

e. Whether Defendants' rounding policies and practices, combined with their requirement that Plaintiff and Class Members not punch in when they arrive at the casino and begin working, until 7 minutes before their scheduled shift, results in the Class Members not being compensated for all the time they have actually worked;

f. Whether Defendants' rounding policies and practices, combined with their requirement that Plaintiff and Class Members punch in 7-to-5 minutes before their scheduled shift,

before they are compensated for their time, violates Colorado law;

g.      Whether Defendants' rounding policies and practices, combined with their requirement that Plaintiff and Class Members could not punch out before the end of their scheduled shift without approval from management, results in the Class Members not being compensated for all the time they have actually worked;

h.      Whether Defendants' rounding policies and practices, combined with their requirement that Plaintiff and Class Members were discouraged from punching out more than 7 minutes after the end of their shift, results in the Class Members not being compensated for all the time they have actually worked;

i.      Whether Defendants' rounding policies and practices, combined with Defendants' Attendance Policy that discourages employees from punching in after the start of their scheduled shift, results in the Class Members not being compensated for all the time they have actually worked;

j.      Whether Defendants acted willfully in failing to pay Class Members properly for all the time they have actually worked, including all overtime wages; and

k.      The extent of the appropriate measure of injunctive and declaratory relief for the Colorado Class.

59.     Plaintiff anticipates that Defendants will further raise defenses that are common to the Colorado Class.

**Typicality.**

60.     The claims asserted by Plaintiff are typical of the Class Members she seeks to represent.  Plaintiff has the same interests and suffers from the same unlawful practices as the

Colorado Class Members.

61.    Plaintiff is a member of the Colorado Class as an hourly, non-exempt former employee of Defendants' that was subjected to Defendants' rounding policies and practices and deprived of payment for all hours worked.

62.    Plaintiff's claims therefore stem from the same practices or course of conduct that form the basis of the Colorado Class claims.

63.    All of the Class Members' claims are based on the same facts and legal theories.

64.    There is no antagonism between Plaintiff's interests and the Class Members' interests, because their claims are for damages provided to each individual employee by statute.

65.    The injuries that Plaintiff suffered are similar to the injuries that the Class Members suffered and continue to suffer, and they are relatively small compared to the expenses and burden of individual prosecutions of this litigation.

**Adequacy.**

66.    Plaintiff will fairly and adequately protect the interests of all members of the Colorado Class, and there are no known conflicts of interest between Plaintiff and the Class Members.

67.    Plaintiff, moreover, has retained counsel experienced in handling wage-and-hour cases and complex litigation who have already devoted substantial time and resources to investigating the Class Members' claims and who will vigorously prosecute this litigation.

**Common Questions of Law and Fact Predominate and a Class Action is Superior to Joinder of Claims or Individual Lawsuits.**

68.    The common questions identified above predominate over any individual issues,

which will relate solely to the calculations of relief due to individual Class Members.

69.    The prosecution of separate actions by the Class Members could either result in inconsistent adjudications establishing incompatible pay practices or, as a practical matter, dispose of the legal claims of Class Members who are not parties to such separate adjudications.

70.    As the damages suffered by each individual Class Member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Class Member to bring individual claims against Defendants.  Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

71.    When employers in Colorado violate wage and hour laws, current employees are often afraid to assert their rights out of fear of retaliation.  Class action treatment will provide putative Class Members who are not named in the Complaint with a type of anonymity that allows for the vindication of their rights, while at the same time, protection of their privacy.

## FIRST CLAIM FOR RELIEF
**(Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, Brought as a Collective Action by Plaintiff on Behalf of All Others Similarly Situated Against All Defendants)**

72.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

73.    Plaintiff brings this case as a collective action on behalf of herself and other similarly situated Hourly Employees pursuant to 29 U.S.C. § 216(b) to recover unpaid wages, including overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

74.    At all times relevant to this matter, Defendants were "employers" within the

meaning of 29 U.S.C. § 203(d).

75.    At all times relevant to this matter, Plaintiff and the Collective Action Class members are or were employees pursuant to 29 U.S.C. § 203(e).

76.    The FLSA requires that covered employees be compensated for every hour worked in a workweek.  29 U.S.C. § 206(b).

77.    The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  29 U.S.C. § 207(a).

78.    The overtime wage provisions set forth in the FLSA apply to Defendants and the positions held by Plaintiff and the Collective Action Class members are not exempt from the FLSA's overtime requirements.

79.    Defendants have engaged in a willful practice of violating the FLSA by requiring Plaintiff and the Collective Action Class members to work prior to the scheduled start time of their shift and/or after the scheduled ending time of their shift, without compensation and without paying them for properly calculated regular rate wages and overtime compensation.

80.    Federal law permits employers to round up or down to the nearest quarter hour, so long as "this arrangement averages out so that the employees are fully compensated for all the time they actually work."  29 C.F.R. §785.48(b).  Defendants' rounding policies and practices instead were conducted in a manner that resulted, over a period of time, in failure to compensate the Collective Action Class members and Plaintiff for all the time they have actually worked.

81.    As described herein, Defendants' rounding policy is not neutral and, as implemented, it illegally denies compensation to the Collective Action Class members.

Defendants require their employees to begin working 5-to-7 minutes before their scheduled start time (without compensation) but inform them that repeatedly arriving even a minute after their scheduled start time would be "a pattern of absenteeism" and grounds for discipline (depriving late arrivals of any rounding benefit over time). At the same time, Defendants' employees are not allowed to leave their shifts before their scheduled end time without seeking management approval.

82.    The inevitable result of Defendants' rounding policy is the systematic illegal failure to compensate their employees. Even if some employees benefited from the occasional rounding of time in their favor, for being late or leaving early, they would be subject to discipline or refused permission. Rounding of time in the employees' favor thus happens infrequently and, even on those infrequent occasions, does not fully make up for the frequency with which time is rounded in Defendants' favor.

83.    As a result of Defendants' willful actions, Plaintiff and the Collective Action Class members have been illegally deprived of wages and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

84.    As a result of Defendants' willful actions, Plaintiff and the Collective Action Class members have been illegally deprived of overtime compensation and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

85.    Records pertinent to calculating the number of excess hours worked by the Collective Action Class members and the compensation they are entitled to receive are in the possession and control of Defendants and their agents. Plaintiff, therefore, is unable to state, until

discovery is obtained, the exact amounts owed to the Collective Action Class members.

## SECOND CLAIM FOR RELIEF
**(Violation of the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.*, Implemented by the Colorado Minimum Wage Order, 7 CCR 1103-1, Brought as a Class Action by Plaintiff on Behalf of All Others Similarly Situated Against All Defendants)**

86.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

87.    Plaintiff and the Class Members were employed by Defendants in a covered industry as defined by the CMWO and the CMWA.

88.    Defendants' rounding policies and practices described herein of paying Plaintiff and Class Members according to rounded hours, instead of actual punch times, over time deprived them of pay for all regular hours actually worked.

89.    Plaintiff and the Class Members are therefore entitled to be paid for their work that has never been compensated, including all applicable penalties, statutory damages, costs, fees, and interest.

90.    Plaintiff and the Class Members also seek declaratory relief including, but not limited to, a declaration from the Court that Defendants' rounding policies and practices described herein are illegal and require reformation.

91.    Plaintiff and Class Members also seek injunctive relief in the form of an order from the Court requiring Defendants to reform its rounding policies and practices described herein.

## THIRD CLAIM FOR RELIEF
**(Violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* ("Wage Act") Brought as a Class Action by Plaintiff on Behalf of All Others Similarly Situated Against All Defendants)**

92.    Plaintiff incorporates by reference the above paragraphs as though set forth fully

and separately herein.

93.     Upon filing and service of this Complaint, Plaintiff and the Class Members sent a demand for payment of unpaid wages in compliance with the Wage Act. Defendants are therefore on actual notice that Plaintiff and other similarly situated employees are due unpaid wages resulting from Defendants illegal rounding policies and practices. This Complaint further puts Defendants on constructive or implied notice that Plaintiff and all of Defendants' similarly situated Hourly Employees are also due unpaid wages resulting from Defendants' illegal rounding policies and practices.

94.     After 14 days has lapsed, Defendants failed to pay Plaintiff and the Class Members their demanded wages. This allegation is subject to amendment should Defendants in fact make a legal tender of what it owes Plaintiff and the Class Members.

95.     As such, Plaintiff and the Class Members are entitled to statutory penalties in the amount of 125% of the wages owed or the Hourly Employees' average daily earnings for each day, not to exceed 10 days, whichever is greater.

96.     Plaintiff and the Class Members are also entitled to an additional 50% of the assessed penalty because Defendants' violation was and remains willful, as well as attorneys' fees, costs and interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself, similarly situated persons and the Class Members, prays for the following relief:

A.     That, at the earliest possible time, the Court, with regard to the First Claim for Relief, preliminarily certify this action to be a proper collective action pursuant to 29 U.S.C. § 216

and permit Plaintiff to notify all affected persons that an action asserting FLSA claims has been filed, of the nature of the action, and of their right to join the suit;

B.      Declare that Defendants violated the overtime provisions of the FLSA, 29 U.S.C. § 207, as to Plaintiff and similarly situated persons who opt into this action; that Defendants failed to pay amounts owed to Plaintiff and similarly situated persons for time worked in violation of 29 C.F.R. § 785.48(b); that Defendants' violations were willful; that a three year statute of limitations applies to the Collective Action Class; that Plaintiff and other similarly situated persons are entitled to be paid overtime for work in excess of 40 hours per week; and that the amount of unpaid time worked and overtime wages to which Plaintiff and others similarly situated are entitled is to be doubled as liquidated damages and awarded to them;

C.      Declare that Defendants violated the CMWA, as implemented by the CMWO, by failing to pay Plaintiff and Class Members for all time worked due to Defendants' rounding policies and practices; and that Defendants' rounding policies and practices must be reformed to comply with Colorado law;

D.      Declare that Defendants violated the Wage Act by failing to pay regular wages and overtime compensation to Plaintiff and Class Members; that Defendants failed to pay Plaintiff and Class Members their outstanding wages within 14 days of a written demand for same; and that Defendants acted willfully in violating the Wage Act;

E.      Grant Plaintiff and all similarly situated employees and Class Members a permanent injunction enjoining Defendants, and all those acting in concert with Defendants at Defendants' direction, from engaging the rounding policies and practices which violate the FLSA, the CMWA, and the CMWO;

F.      Award Plaintiff and other similarly situated persons who opt in to the Collective Action Class damages in the amount of overtime compensation, and any other amounts owed, to be proven at trial;

G.      Award Plaintiff and other similarly situated persons who opt in to the Collective Action Class liquidated damages in an amount equal to the unpaid wages and overtime compensation shown to be owed pursuant to 29 U.S.C. § 216(b), or, if liquidated damages are not awarded, then in the alternative, prejudgment interest;

H.      Award Plaintiff and Class Members the amount of unpaid wages, overtime, and any other amounts owed due to Defendants' rounding policies and practices, according to proof at trial;

I.      Award Plaintiff and Class Members statutory penalties for Defendants' failure to timely pay Plaintiff and Class Members outstanding wages and overtime compensation, as well as statutory penalties for Defendants' willful violation of the Wage Act;

J.      Award reasonable attorneys' fees and costs;

K.      Award Plaintiff and Class Members pre-judgment interest at the highest lawful rate; and

L.      Such further relief as the Court deems just and proper.

### **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury.


Respectfully submitted this 9th day of July, 2019.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: <u>*s/ Shelby Woods*</u>

    Claire E. Hunter (39504)
    Shelby Woods (48606)
    HKM Employment Attorneys LLP
    730 17th Street, Suite 750
    Denver, Colorado 80202
    chunter@hkm.com
    swoods@hkm.com
    *Attorneys for Plaintiff Pamela Hunter and the*
    *Proposed Class and Collective Action Members*